IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PHOENIX FINANCIAL & INVESTMENTS, INC., *et al.*, | § § § | |
| Plaintiffs, | § | CIVIL ACTION NO. H-25-6362 |
| v. | § § | |
| MCLAREN AUTOMOTIVE, INC., *et al.*, | § § | |
| Defendants. | § § | |

**MEMORANDUM AND OPINION**

This lawsuit arises out of a lease of a 2020 McLaren GT that allegedly had several problems, from failing air-conditioning units to broken chassis parts, that required 11 visits to the repair shop. The lessees, Phoenix Financial & Investments Inc. and Ruth Vega, sued McLaren Automotive, Inc. and indiGO Motorsports Texas, LLC for violations of express and implied warranties and for deceptive trade practices. (Docket Entry No. 1). The defendants have moved to dismiss. (Docket Entry No. 7).

Based on the complaint, the motion to dismiss, the responses, and the applicable law, the court grants the motion to dismiss. The plaintiffs have leave to amend their claim under the Magnuson-Moss Warranty Act and must do so by April 24, 2026. The remaining claims are dismissed, with prejudice, because amendment would be futile.

The reasons for these rulings are stated below.

I. **Background**

"On January 29, 2021, Phoenix and Vega entered into a 36-month Lease Agreement with indiGO for a 2020 McLaren GT." (Docket Entry No. 1 ¶ 8). When the vehicle was leased, it "had an odometer reading of 114 miles." (*Id.* ¶ 12). The plaintiffs leased the vehicle "to enjoy superior

craftmanship, a quiet and climate-controlled cabin, enhanced performance, and premium features." (*Id.* ¶ 13).

The plaintiffs allege that "[s]hortly after receiving the Vehicle," they "discovered that the Vehicle had several defects, most prominently in its air conditioning/climate control system." (*Id.* ¶ 14). The plaintiffs "took the Vehicle to The Collection," an auto-repair shop in Florida, "for repairs on February 9, 2021." (*Id.* ¶ 16). "During this inspection, The Collection verified Plaintiffs' complaints regarding the Vehicle's climate control system and discovered the Vehicle's temperature setting was not working, either on hot or cold." (*Id.* ¶ 17). "The Collection was eventually able to restore partial functionality to the Vehicle's heating system," but "the Vehicle's cooling system remained inoperative." (*Id.* ¶ 19).

The plaintiffs allege that they continued to experience additional problems with the vehicle. They "discovered that while the Vehicle was in regular use, there would be a cracking sensation felt near the front-driver's side suspension of the Vehicle." (*Id.* ¶ 20). "On November 8, 2021, Plaintiffs brought the Vehicle once again to The Collection to address this new issue, and The Collection found the Vehicle's engine undertray was improperly installed so that it would pop when the Vehicle's chassis was torqued." (*Id.* ¶ 21). "In January 2022, Plaintiffs brought the Vehicle to The Collection to address the issue with the air conditioning system, which was only producing hot air." (*Id.* ¶ 22). "During this repair, The Collection discovered a leak in the Vehicle's condenser line." (*Id.* ¶ 23). "Throughout the 36-month lease, Plaintiffs dropped off the Vehicle for servicing at The Collection around eleven times." (*Id.* ¶ 24).

Because of these difficulties, the plaintiffs allege that they could not enjoy the vehicle, despite making monthly payments on the lease. They allege that "[o]n numerous occasions," they "decided not to drive the Vehicle due to the many mechanical problems it experienced from the

start of the lease, particularly during warm weather due to the faulty air conditioning." (*Id.* ¶ 26). The plaintiffs allege that the "Vehicle did not provide a climate-controlled cabin," and they "were forced to endure numerous unpleasant rides in Miami temperatures due to its mechanical failures." (*Id.* ¶ 29). They allege that they "did not get what was promised in exchange for their lease of the Vehicle." (*Id.* ¶ 30).

Phoenix and Vega sued McLaren and indiGO for: (1) a violation of the Magnuson-Moss Warranty Act (McLaren); (2) a breach of the implied warranty of merchantability under Texas's UCC (McLaren); (3) a violation of the Texas Deceptive Trade Practices Act (McClaren); and (4) a violation of the Texas Deceptive Trade Practices Act (indiGO). (Docket Entry No. 1). The defendants have moved to dismiss. (Docket Entry No. 7).

## II.     The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (cleaned up); *Eli Lilly & Co. v. Revive Rx, LLC*, 812 F. Supp. 3d 708, 723 (S.D. Tex. 2025).

## III.      Analysis

### A.      The Warranty Claims

The plaintiffs allege that McLaren violated the implied warranties of merchantability and fitness under the Magnuson-Moss Warranty Act and the Texas Uniform Commercial Code. (Docket Entry No. 1 ¶¶ 37–62). McLaren moves to dismiss on the basis that the lease agreement disclaims express and implied warranties. (Docket Entry No. 7 at 3–5). Claims can fail under both statutes if the relevant contract adequately disclaims the warranties alleged. *See, e.g.*, *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587–88 (7th Cir. 2001) (Magnuson-Moss Warranty Act); *Orr v. Keystone RV Co.*, 736 F. Supp. 3d 389, 395–96 (E.D. Va. 2024) (same); *Womco, Inc. v. Navistar Intern. Corp.*, 84 S.W.3d 272, 278–79 (Tex. App.—Tyler 2002, no pet.) (citing *Southwestern Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 577 (Tex. 1991)) (Texas Uniform Commercial Code). The plaintiffs argue that the disclaimer is not sufficiently conspicuous to disclaim the implied warranties of merchantability and fitness. *See Orr*, 736 F. Supp. 3d at 395–96 (assessing whether the disclaimer was conspicuous under state law); *Womco, Inc.*, 84 S.W.3d at 278–79 (same). Texas courts have recognized that disclaimers of warranties in car leases must be conspicuous. *See, e.g.*, *LaBella v. Charlie Thomas, Inc.*, 942 S.W.2d 127, 131–32 (Tex. App.—Amarillo 1997, writ denied); *see also Johnston v. McKinney Am., Inc.*, 9 S.W.3d 271, 282 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (citing *LaBella*, 942 S.W.2d at 131) (recognizing a common-law implied warranty of merchantability to lease transactions).

A term or clause is conspicuous when it is "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it." TEX. BUS. & COM. CODE § 1.201(10). Conspicuous terms include:

> (A) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and

> (B) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

*Id.*

The lease agreement's disclaimer is conspicuous. On the page that Vega signed, the agreement states: "We [IndiGo] are providing this Vehicle to you AS-IS and we expressly disclaim all warranties, express and implied, including any implied warranties of merchantability and fitness for particular purpose . . . ." (Docket Entry No. 1 at 12). This disclaimer is set out in a separate warranty box:

**RETAIL LEASE AGREEMENT**

Lease No: 9547
Lessee's Name(s): PHOENIX FINANCIAL & INVESTMENTS INC   RUTH VEGA
Date: 01/29/2021
Address: 6789 COLLINS AVE 5311   MIAMI FL 33141
County: MIAMI-DADE
Telephone (1): 914-471-7476        Telephone (2):
DOB:
E-mail:                         D.L./State I.D.#:                   Issuing State:            Exp. Date:

The above information has been requested so that we may verify your identity. By signing below, you represent that you are at least 18 years of age and have authority to enter into this Agreement. The Odometer Reading for the Vehicle you are leasing is accurate unless indicated otherwise. Please refer to the Odometer Mileage Statement for full disclosure.

| YEAR 2020 | MAKE MCLAREN | MODEL MCLRNGT | COLOR ORA | STOCK NO. LW000532 |
| VIN/SERIAL NO. SBM22GCA8LW000532 | | ODOMETER READING ☐ Not Accurate   114 | | SALESPERSON: GARRY GREENHALGH   134 |
| THE VEHICLE IS: ☒ NEW  ☐ USED | PRIOR USE DISCLOSURE: ☐ DEMONSTRATOR  ☐ FACTORY OFFICIAL/EXECUTIVE  ☐ RENTAL  ☐ OTHER | | | |

**WARRANTY STATEMENT**

We are providing this Vehicle to you AS-IS and we expressly disclaim all warranties, express and implied, including any implied warranties of merchantability and fitness for a particular purpose, unless the box beside "USED VEHICLE LIMITED WARRANTY APPLIES" is marked below or we enter into a service contract with you at the time of, or within 90 days of, the date of this transaction. All warranties, if any, by a manufacturer or supplier other than our Dealership are theirs, not ours, and only such manufacturer or supplier shall be liable for performance under such warranties. We neither assume nor authorize any other person to assume for us any liability in connection with the lease of the Vehicle and sale of related goods and services.

CONTRACTUAL DISCLOSURE STATEMENT (USED VEHICLES ONLY) The information you see on the window form for this Vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale. Traducción española: Ver el dorso.
☐ Used Vehicle Limited Warranty Applies. We are providing a Used Vehicle Limited Warranty in connection with this transaction. Any implied warranties apply for the duration of the Limited Warranty.

**TRADE-IN VEHICLE INFORMATION**
Year:            Make:            Model:            Color:

**CAPITALIZED COST**
(Your total cost for goods, services & fees paid over lease term)

| CASH PRICE OF VEHICLE | $ | 230925.00 |
| N/A | $ | N/A |
| N/A | $ | N/A |
| Acquisition Fee | $ | 1450.00 |
| N/A | $ | N/A |
| DMV FEES | $ | 185.40 |
| DOCUMENTARY FEE | $ | 150.00 |
| GROSS CAPITALIZED COST | $ | 232710.40 |

5

(*Id.*).

The lease agreement also states that the "Vehicle is subject to the manufacturer's standard new warranty." (*Id.* at 15). It then states that there are "no warranties, guarantees, or other rights provided to you by us or the Vehicle's manufacturer other than those disclosed in the Lease." (*Id.*). This sentence is followed by a broad disclaimer stating, "WE DISCLAIM ALL IMPLIED WARRANTIES, INCLUDING THE WARRANTIES OF MERCHANTABILITY OR FITNESS FOR PARTICULAR PURPOSE, EXCEPT WHERE PROHIBITED BY LAW." (*Id.*). This warranty language is next to other important terms, including the purchase option at the end of the lease and the itemization of gross capitalized costs:

(*Id.*).

A reasonable person ought to have noticed these disclaimers. The initial warranty statement is set off with its own box, and Vega signed below it. *See* TEX. BUS. & COM. CODE § 1.201(10)(B) (defining "conspicuous" as language "set off from surrounding text of the same

6

size by symbols or other marks that call attention to the language"). At the end of the lease agreement, the warranty language is in all caps, set off by its own numbered item, and surrounded by other material terms that the parties reviewed and negotiated. *See Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 179 (5th Cir. 2016) (clauses in boldface and all caps are conspicuous under Texas law). The warranty terms are not tucked away and hidden. *Cf. Klo-Zik Co. v. Gen. Motors Corp.*, 677 F. Supp. 499, 508 (E.D. Tex. 1987) (a warranty was not conspicuous when on the "back of a piece of paper" and was "not in bold or capital lettering"). In addition, the plaintiffs knew of the warranty language, because their complaint asserts that the defendants did not provide the "standard new car warranty" to which they claim to be entitled. (Docket Entry No. 1 ¶ 11). The lease agreement adequately disclaims the implied warranties of merchantability and fitness under Texas law.

The remaining issue is whether the Magnuson-Moss Warranty Act limits McLaren's ability to disclaim implied warranties. The parties did not address this issue, but the court is still bound to apply the statute's clear terms. *See In re Container Store Grp., Inc.*, 676 B.R. 356, 388–89 (S.D. Tex. 2026). A supplier cannot disclaim an implied warranty when "such supplier makes any written warranty to the consumer with respect to such consumer product." 15 U.S.C. § 2308(a). This limits a supplier's ability to disclaim an implied warranty. *See Robin Towing Corp. v. Honeywell, Inc.*, 859 F.2d 1218, 1222–23 (5th Cir. 1988). "By its plain language, Section 2308 prohibits sellers from disclaiming implied warranties when either a full or a limited warranty is provided by the seller." *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1031 (11th Cir. 2017); *see Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 526 (7th Cir. 2003). As the defendants concede, the lease agreement provides that the "Vehicle is subject to the manufacturer's standard new warranty." (Docket Entry No. 1 at 15). If McClaren "issued or agreed to be bound

by the limited written warranty, the disclaimer of implied warranties therefore would be ineffective to bar plaintiff's claim." *Glob. Quest, LLC*, 849 F.3d at 1031.

The litigation record is muddled on who is bound by the lease agreement. The plaintiffs allege that "Phoenix and Vega entered into" the lease agreement with "indiGO." (Docket Entry No. 1 ¶ 8). The lease agreement appears limited to these parties. The lease agreement expressly disclaims all warranties with respect to indiGO but provides that there is a manufacturer's warranty for which the manufacturer, not indiGO, is responsible. (*Id.* at 12, 15). Neither the complaint nor the contract shows whether McClaren "issued or agreed to be bound by the limited written warranty." *Glob. Quest, LLC*, 849 F.3d at 1031. Nor do the parties address whether the plaintiffs can state a claim against McClaren in the absence of the lease agreement.[1] Because these issues remain unclear, and this case is in its early stages, leave to amend is appropriate.

Count 2 under Texas law is dismissed, with prejudice and without leave to amend, because amendment would be futile. Count 1 under the Magnuson-Moss Warranty Act is dismissed, without prejudice and with leave to amend.

### B. The DTPA Claims

A two-year statute of limitation applies to the Deceptive Trade Practices Act claims. Tex. Bus. & Com. Code § 17.565; *Dougherty v. Steve Hart Restoration & Race Preparation, Ltd.*, No. CV H-19-1924, 2021 WL 5912174, at *5 (S.D. Tex. Nov. 12, 2021), *aff'd*, No. 21-20663, 2022 WL 4130771 (5th Cir. Sept. 12, 2022). The plaintiffs initially brought this lawsuit in Florida state court on May 23, 2025, (Docket Entry No. 13 at 8), but then refiled the suit in this court on December 31, 2025, (Docket Entry No. 1). Assuming the earlier time governs, as the plaintiffs

---

[1] McLaren asserts a statute of limitations defense against the implied warranty claim under Texas law, not federal law. (Docket Entry No. 7 at 4–5).

argue, (Docket Entry No. 12 at 7–8), the plaintiffs' claims must have accrued by May 23, 2023.

A claim accrues when a "when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)). "Legal injury" is defined as "an injury giving cause of action by reason of its being an invasion of a plaintiff's right." *Id.* (citing *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997)).

The discovery rule delays accrual until the plaintiff "knew, or exercising reasonable diligence, should have known of the wrongful act causing injury." *Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*, 998 F.3d 190, 199 (5th Cir. 2021) (quoting *N. Tex. Opportunity Fund v. Hammerman & Gainer Int'l., Inc.*, 107 F. Supp. 3d 620, 635−36 (N.D. Tex. 2015)). The discovery rule applies only when "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996). "Texas courts have set the inherently undiscoverable bar high, to the extent that the discovery rule will apply only where it is nearly impossible for the plaintiff to be aware of his injury at the time he is injured." *Acad. of Allergy*, 998 F.3d at 200 (quoting *Sisoian v. Int'l Bus. Machs. Corp.*, No. A-14-CA-565-SS, 2014 WL 4161577, at *4 (W.D. Tex. Aug. 18, 2014)).

"An injury is not inherently undiscoverable when it is the type of injury that could be discovered through the exercise of reasonable diligence." *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 66 (Tex. 2011). "Reasonable diligence requires parties to make general inquiries to knowledgeable parties." *Acad. of Allergy*, 998 F.3d at 200. "[W]hether the discovery rule applies turns on whether the injured person is aware that she has an injury and that it was likely caused by

9

the wrongful acts of another." *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018).

The DTPA claims did not accrue within the limitations period. The vehicle was "delivered" to the plaintiffs on January 29, 2021, the date the lease originated. (Docket Entry No. 1 at 14). The plaintiffs do not plead particularly when the alleged misrepresentations or deceptive practices took place, but they must have predated that date. In addition, the plaintiffs allege that "[s]hortly after receiving the Vehicle, [they] discovered that the Vehicle had several defects, most prominently in its air conditioning/climate, control system." (*Id.* ¶ 14). The plaintiffs allege that they took the "Vehicle to The Collection for repairs on February 9, 2021" and that "The Collection . . . discovered the Vehicle's temperature setting was not working, either on hot or cold." (*Id.* ¶ 17). The last substantial issue alleged in the complaint arose in January 2022. (*Id.* ¶ 22–23). The plaintiffs do not explain how they were unable to uncover problems with the car, and therefore the falsity or deceptiveness of the defendants' trade practices and representations, before May 23, 2023.[2] Reasonable diligence would have revealed the problems with the vehicle. The defendants' allegedly deceptive practices claims accrued well before this lawsuit was filed and after the limitations period expired.

The statute of limitations bars the plaintiffs' DTPA claims. Counts 3 and 4 are dismissed, with prejudice.

---

[2] The plaintiffs' response does not address the defendants' limitations argument. (Docket Entry No. 12 at 9–10). *See ODonnell v. Harris County*, 808 F. Supp. 3d 738, 755 (S.D. Tex. 2025) (waiver).

**IV. Conclusion**

The motion to dismiss, (Docket Entry No. 7), is granted. Counts 2, 3, and 4 are dismissed, with prejudice. Count 1 is dismissed without prejudice and with leave to amend. The plaintiffs must amend their complaint consistent with this opinion by April 24, 2026.

SIGNED on April 10, 2026, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge